UNITED STATES of America,
Plaintiff–Appellee,

v.

Ibukun O. MAYOMI,
Defendant–Appellant.

No. 87–2658.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 10, 1988.

Decided May 1, 1989.

Jeffrey Blumenthal, Chicago, Ill., for defendant-appellant.

John E. Farrell, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Defendant-appellant Ibukun O. Mayomi appeals his conviction before a jury on one count of attempted possession of heroin with intent to distribute in violation of 21 U.S.C. § 846, one count of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and seven counts of importation of a controlled substance in violation of 21 U.S.C. § 952(a) and 18 U.S.C. § 2. We affirm.

## I.

In 1985 defendant Mayomi, using the assumed name Nike Akinsola, rented a postal box from Scanner Services,[1] a lamp company that also operates a private mailbox service. The mailboxes were located at 1744 West Devon Street, Chicago, Illinois. During the period Mayomi received his mail at Scanner Services, he made frequent telephone inquiries concerning whether he had received mail.

On July 8, 1986, Agent James St. John of the Federal Bureau of Investigation's Chicago office received a tip that an envelope containing a light brown powder had arrived at Scanner Services the previous day. Knowing that heroin was similar in appearance to the powder described by the tipster, St. John went to Scanner Services and interviewed the manager of the company, David Ashton. Ashton stated that the previous day, while he was sorting mail, he accidentally cut open an envelope addressed to Nike Akinsola and observed a brown powder fall from the envelope. Ashton thereafter turned the envelope and its contents over to St. John and informed him that on previous occasions he had observed other letters addressed to Akinsola that were very similar in appearance to the one he had accidentally cut open. St. John observed that the envelope did not contain a return address, and was postmarked Madras, India. St. John performed a field test on the contents of the envelope and determined that the brown powder was heroin. St. John instructed Ashton to detain any similar envelopes addressed to Akinsola re-ceived thereafter and requested that the FBI be immediately notified of its arrival.

On July 9, St. John interviewed an agent from the Drug Enforcement Administration who informed him that a common way of smuggling heroin into the United States from India was to mail it to private postal boxes. St. John thereafter subpoenaed the records for the defendant's mailbox from Scanner Services, and they reflected that Nike Akinsola lived at 4650 North Sheridan Road, Chicago, Illinois, and listed his phone number as 728-7894. St. John discovered that the address was that of a one-story supermarket and that the phone number was false as it was neither assigned to Nike Akinsola nor listed to the address the defendant provided on his mailbox registration form.

On Saturday, July 12, 1986, St. John contacted Ashton and learned that two more envelopes postmarked in India and addressed to the defendant had just arrived at Scanner Services. St. John instructed Ashton to hold the letters until the following Monday.

St. John arrived at Scanner Services on Monday, July 14, with two Illinois State Police Troopers and two police dogs specially trained to sniff and detect narcotics. After Ashton informed St. John that a third letter addressed to Akinsola had arrived that day, the three letters were commingled with other mail also received at Scanner Services that day. According to St. John, the dogs detected narcotics in one of the three envelopes. St. John then performed an external examination of the three envelopes, without opening them, and determined that each contained a powdery substance. Based upon this information, a United States Magistrate issued a search warrant for the three envelopes later that same day.

On July 15, St. John transported the three envelopes to the FBI laboratory in Washington, D.C., where the Bureau's chemists analyzed the substance contained in the envelopes and determined that it was

---

1. We note that the defendant conceded in his brief and at oral argument that he leased the postal box at Scanner Services—a fact that he denied under oath at trial.

heroin. The bulk of the heroin was replaced by talc powder, the envelopes were resealed, and, on the following day, were returned to the defendant's mailbox for purposes of a controlled delivery. Additionally, a surveillance team was maintained inside and outside the building where the defendant's mailbox was located.

On July 17, the defendant, after calling Scanner Services and being informed that there was mail in his box, drove to Scanner Services, inspected the envelopes in his mailbox, and left without taking them. He then drove to Evanston, Illinois, where federal agents observed him make a call from a public telephone. The defendant thereafter met with a woman who entered his car. The two of them returned to Scanner Services where the woman entered the mailbox area, removed the three envelopes, and returned with them to the car. The couple then returned to Evanston, and the woman exited the car. The defendant drove to another location on the north side of Chicago, left the vehicle without the envelopes and entered an apartment building adjacent to the area where he had parked the car. Shortly thereafter, federal agents arrested the defendant. The agents confiscated the three envelopes from the car's glove compartment, as well as the Scanner Services mailbox keys he had in his possession and a pocket beeper.

After the defendant's July 17 arrest, Scanner Services received three additional envelopes addressed to Nike Akinsola similar in appearance to the envelopes previously inspected by the FBI. St. John obtained another search warrant for these three envelopes, opened them, and discovered each to contain a powdery substance similar to that found in the previously examined envelopes. St. John field tested the powder and determined that it contained brown heroin. The street value of the heroin recovered from the seven envelopes received at Scanner Services was estimated to be between $200,000 and $250,000.

On August 14, 1986, the Northern District of Illinois Special October 1984 Grand Jury indicted Mayomi on one count of attempted possession of heroin with intent to distribute, one count of possession of heroin with intent to distribute, and seven counts of importation of a controlled substance. On September 25, 1986, Mayomi entered a plea of not guilty to all counts set forth in the indictment.

The defendant filed motions to quash the search warrants and to suppress the evidence confiscated arguing that his Fourth Amendment rights had been violated. Specifically, Mayomi alleged that the FBI, in detaining his mail at Scanner Services, had seized his property without a warrant and that there was insufficient probable cause for the magistrate to issue a search warrant. The district court, after a hearing, denied both motions on November 14, 1986.

A jury trial commenced on February 9, 1987, and culminated four days later, February 13, with the jury returning a verdict of guilty on all counts. The defendant thereafter filed a motion to dismiss the indictment and vacate the judgment of conviction arguing that the term of the Special October 1984 Grand Jury had not been properly extended past March 1986; thus, the grand jury lacked jurisdiction to indict him in August 1986. Specifically, Mayomi alleged that the March 1987 order of Chief Judge McGarr of the United States District Court for the Northern District of Illinois extending the term of the Special October 1984 Grand Jury *nunc pro tunc* was unlawful and void. The district court denied the motion on August 28, 1987.

On October 2, 1987, the district court sentenced the defendant to four years' imprisonment on the count charging Mayomi with attempted possession of heroin with intent to distribute, and a consecutive period of five years' probation on the remaining counts. Mayomi on appeal alleges that the district court committed reversible error in the following respects: (1) the district court erred in denying his motion to suppress the six envelopes containing heroin because the government, through Ashton, violated his Fourth Amendment rights by detaining and seizing his mail prior to

the issuance of a search warrant;[2] (2) the district court abused its discretion by limiting the cross-examination of David Ashton; and (3) the district court erred in failing to dismiss the August 1986 indictment of the defendant, because the term of the Special October 1984 Grand Jury expired in March 1986.

At the outset we dispose of Mayomi's third allegation of error. This court explicitly rejected this argument in *United States v. Taylor*, 841 F.2d 1300 (7th Cir.), *cert. denied*, —— U.S. —— – ——, 108 S.Ct. 2904–05, 101 L.Ed.2d 937 (1988), holding that the term of the Special October 1984 Grand Jury had been properly extended until October 1986, and thus, the indictments handed down by the grand jury prior to that time were valid. The grand jury indicted Mayomi in August 1986—nearly two months before the expiration of its term in October 1986. Thus, our holding in *Taylor* disposes of the defendant's claim that the grand jury was without jurisdiction to indict him in August 1986. Mayomi advances no argument that was not previously considered by this court in *Taylor;* thus, the issue requires no further discussion here. We turn to Mayomi's two remaining arguments.

## II.

Mayomi initially argues that the district court erred in denying his motion to suppress the contents of the envelopes received at Scanner Services because the government illegally detained his mail for an unreasonable period of time before obtaining a search warrant. The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Supreme Court has held that this Fourth Amendment guarantee extends to items in the mails. *United States v. Van Leeuwen*, 397 U.S. 249, 251, 90 S.Ct. 1029, 1031, 25 L.Ed.2d 282, 284 (1970). Therefore, we analyze the detention and various searches of the defendant's mail by the government, and private individuals acting in its behalf, under the strictures of the Fourth Amendment.

The initial search of Mayomi's mail took place when David Ashton accidentally cut open the letter received at Scanner Services on July 7, 1986. The defendant does not contest, at least not for Fourth Amendment purposes, the validity of Ashton's search of the envelope or the government's use of the envelope and its contents as evidence at trial.[3] Indeed, "[i]t is axiomatic that the Fourth Amendment does not apply to private entities.... [A] wrongful search or seizure conducted by a private party does not rise to a constitutional violation of the Fourth Amendment, ... nor prevent the government from using evidence that it has acquired lawfully." *United States v. Koenig*, 856 F.2d 843, 846–47 (7th Cir.1988) (citations omitted). Here, Ashton put the envelopes and their contents in plain view of FBI Agent St. John. St. John's actions —namely, seizing the envelope and performing a field test on its contents—were

**2.** On appeal Mayomi abandons the argument he raised in the district court that the information presented to the magistrate lacked sufficient probable cause for the issuance of the search warrant for his mailbox.

**3.** Mayomi indirectly challenges the validity of Ashton's search in his argument, *infra*, that the district court abused its discretion in restricting his cross-examination of Ashton on the identity of the FBI informant and Ashton's involvement in previous FBI investigations. Specifically, Mayomi argues that had the district court allowed him to fully cross-examine Ashton on these matters, he would have established that Ashton was a *de facto* government agent at the time he accidentally cut open the first envelope and thus, Ashton's warrantless search of the

envelope would have been invalid under the Fourth Amendment. We refuse to consider this speculative argument because of our holding, *infra*, that the district court did not abuse its discretion in limiting the defendant's questioning of Ashton on these matters. We further note that the United States' Attorney stated in open court that its motion in limine did not prohibit Mayomi's attorney from asking Ashton whether he had cut open the first envelope at the direction of the FBI. For some reason, Mayomi's attorney failed to pose this question when Ashton was on the witness stand. Thus, we refuse to allow Mayomi to bootstrap his Fourth Amendment claim to a matter which he failed to pursue in the district court. *See infra* note 9.

therefore proper on Fourth Amendment grounds. *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Koenig*, 856 F.2d at 847. After St. John's field test established that the powder in the envelope contained heroin, he instructed Ashton to hold any similar envelopes addressed to the defendant and notify the FBI immediately. It is at this point that we analyze Ashton's actions within the confines of the Fourth Amendment. Although Ashton acted as a private citizen in the initial search of the defendant's mail, it is clear that after the government requested him to detain other similar parcels addressed to the defendant, Ashton acted as an agent of the government for the purpose of assisting the FBI in investigating the defendant's drug-related activities. *See Koenig*, 856 F.2d at 846–47; *see also United States v. Feffer*, 831 F.2d 734, 738–39 (7th Cir.1987). Therefore, the relevant inquiry in this case is whether the government's (including Ashton's) warrantless detention of the defendant's mail received after the initial search violated the defendant's Fourth Amendment right to be free from unreasonable searches and seizures.[4]

The Supreme Court addressed the issue of whether the warrantless detention of private mail by the government, or someone acting on its behalf, violates the Fourth Amendment in *United States v. Van Leeuwen, supra.* In *Van Leeuwen*, a postal clerk became suspicious of two packages containing coins that had just been insured for $10,000 each and mailed in Mt. Vernon, Washington, a town near the Canadian border. When the clerk told a policeman of his suspicions, the policeman noted at once that the return address was a vacant housing area, and that the sender's license plates were from Canada. The packages were detained while the police conducted an investigation. The investigation revealed that both addresses on the packages were under surveillance for illegal trafficking in coins. Approximately 29 hours after the packages were initially deposited at the Mt. Vernon post office, a warrant authorizing the search of the packages was issued. In considering whether the length of time the packages were detained without a warrant was unreasonable, the Supreme Court held that, under the particular facts of that case, the 29–hour detention of the packages was reasonable and proper because the packages were detained based on reasonable suspicion that they contained contraband, pending further investigation directed toward establishing probable cause to support the issuance of a search warrant. 397 U.S. at 252–53, 90 S.Ct. at 1032–33, 25 L.Ed.2d at 285–86.

■■■ In this case two letters, similar in appearance to the letter accidentally cut open by Ashton, arrived at Scanner Services on Saturday, July 12, and a third letter arrived on Monday, July 14. All three letters were detained based upon St. John's suspicion that the envelopes contained heroin. In light of St. John's field analysis and determination that the first envelope contained brown heroin, and the similarity of appearance in the three detained envelopes and that of the first envelope, we hold that this suspicion was reasonable and that it justified the detention of the defendant's mail. Thus, the only remaining question is whether the length of time the letters were held prior to the issuance of a

---

4. We emphasize that the relevant inquiry is whether the *actual* detention of the letters received at Scanner Services, with respect to both the existence of probable cause to detain the letters and the amount of time the letters were detained, comports with the strictures of the Fourth Amendment. The defendant urges us to focus on the time period from July 8 (the date St. John instructed Ashton to hold the defendant's mail *if any was received*) to July 14 (the date St. John obtained the search warrant) in determining whether the amount of time St. John waited to obtain a warrant was reasonable. We refuse to pursue this line of inquiry because we do not consider as wholly fortuitous, as does the defendant, the fact that no mail addressed to the defendant was received at Scanner Services until July 12. Indeed, the FBI could not interfere with the defendant's possessory interest in his mail—and thus could not seize the defendant's mail—until the letters were received at Scanner Services on July 12. *Jacobsen*, 466 U.S. at 113, 104 S.Ct. at 1656, 80 L.Ed. 2d at 94. The defendant's argument, therefore, is not cognizable under the Fourth Amendment.

search warrant deemed the detention of the defendant's mail unreasonable.

The Supreme Court in *United States v. Place*, 462 U.S. 696, 709, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110, 122 (1983), stated:

"[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion. Moreover, in assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation."

Here, St. John obtained a search warrant for the three envelopes on Monday, July 14. Thus, the two envelopes received on July 12 were detained approximately two days, and the third envelope, received on July 14, was detained less than a day. It is obvious that the third letter was detained such a short period of time that the intrusion on the defendant's Fourth Amendment interests was de minimus. With regard to the two letters received on July 12, it is important to note that the letters were detained only over the weekend and for the sole purpose of subjecting them to a canine sniff test[5] by two specially trained dogs

that had detected the presence of heroin on prior occasions.

We therefore hold that under the facts of this case the length of time the envelopes were detained comports with the standards set forth in *Van Leeuwen*[6] and *Place, supra*.[7] The detention of the defendant's mail for a period of forty-eight hours in order to confirm St. John's suspicion that the three envelopes contained heroin did not invade his rights under the Fourth Amendment. We emphasize, as did the Supreme Court in *Van Leeuwen*, that "[t]he significant Fourth Amendment interest was in the privacy of this ... mail; and that privacy was not disturbed or invaded until the approval of the magistrate was obtained." 397 U.S. at 253, 90 S.Ct. at 1032, 25 L.Ed.2d at 286.

### III.

Mayomi's second argument on appeal is that the district court violated his Sixth Amendment right to confront witnesses testifying against him when limiting the scope of his attorney's cross-examination of David Ashton, the manager of Scanner Ser-

---

5. We note that the Supreme Court, in *United States v. Place*, 462 U.S. at 707, 103 S.Ct. at 2644–45, 77 L.Ed.2d at 121, held that a canine sniff test to detect the presence of contraband does not constitute a Fourth Amendment search. Thus, no warrant was required for St. John to subject the defendant's mail to such a test.

6. We expressly decline to adopt the position of the Ninth Circuit that *Van Leeuwen* "created an outer limit of twenty-nine hours" for the warrantless detention of mail to be held reasonable. *See United States v. Dass*, 849 F.2d 414, 415 (9th Cir.1988). Such a position conflicts with the clear import of the *Van Leeuwen* holding that the reasonableness of such detentions must be evaluated in light of all the facts and circumstances. That is, on a case-by-case basis. As the dissent in *Dass* aptly stated:

"[T]he Supreme Court in *Van Leeuwen* specifically stated that it was not establishing a bright-line test of reasonableness at 29 hours:

'The rule of our decisions certainly is *not* that first-class mail can be detained 29 hours after mailing in order to obtain the search warrant needed for its inspection. *We only hold that on the facts of this case ... a 29-hour delay between the mailing[] and the service of the warrant cannot be said to be "un-*

reasonable" *within the meaning of the Fourth Amendment*.'
*Van Leeuwen*, 397 U.S. at 253, 90 S.Ct. at 1032–33 (emphasis added).... Thus, *Van Leeuwen* compels us to review each case to determine whether the delay was unreasonable in light of all the facts and circumstances confronting the government. By creating a rigid outer limit for determining whether a delay is reasonable, the majority has failed to address the totality of the circumstances that caused the delay, contrary to the instruction of the Supreme Court in *Van Leeuwen*."
*Dass*, 849 F.2d at 418 (Alarcon, J., dissenting).

7. We note that our holding applies only to the detention of the two envelopes received on July 12 and the envelope received on July 14. Although the defendant asserts in his brief that the government violated his Fourth Amendment rights by detaining the three envelopes received after he was arrested on July 17, he fails to set forth any facts in support of his assertion. As a result, the defendant has waived any challenge with respect to the admission of these envelopes into evidence. *See Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir.1988) ("[E]ven an issue expressly presented for resolution is waived if not developed by argument.")

vices. Prior to trial the government filed a motion in limine to preclude questioning of government witnesses, including Ashton, regarding the source of the telephone call which initiated the FBI's involvement in this case. Defense counsel objected and stated that he intended to question Ashton concerning whether he was the "cooperating individual" referred to by Agent St. John in his affidavit underlying the warrant to search the envelopes received at Scanner Services and that he intended to test Ashton's credibility and ask him whether or not he had provided St. John with information in previous FBI investigations. The government then expanded its motion to preclude questioning on Ashton's involvement, if any, in investigations other than that of the defendant. Defense counsel further noted that Ashton had refused to speak with him prior to trial. The district court granted the government's motion and ruled that the defendant had failed to establish sufficient facts entitling him to information on the identity of the "cooperating individual," and that cross-examination of Ashton on any prior relationship he may have had with St. John was not relevant to the defendant's case. The defendant contends that the district court's ruling was not only an abuse of discretion, but also a violation of his Sixth Amendment right to confront adverse witnesses.

It is well settled in this circuit that a trial court has wide discretion in limiting cross-examination. *United States v. Herrera–Medina,* 853 F.2d 564, 566 (7th Cir.1988); *United States v. Silva,* 781 F.2d 106, 110 (7th Cir.1986). As the Supreme Court stated in *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986):

> "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, *confusion of the issues,* the witness' safety, or interrogation that is repetitive or *only marginally relevant."*

(Emphasis added). With these standards in mind, we turn to the merits of the defendant's claim.

■ Initially, we address the question whether the district court abused its discretion in precluding cross-examination regarding the identity of the person who initially contacted the FBI. In *United States v. Lewis,* 671 F.2d 1025 (7th Cir. 1982), this court addressed the question of when a defendant is entitled to learn the identity of an informant. In *Lewis,* the defendant was charged with failure to file an income tax return—a fact that was brought to the attention of the Internal Revenue Service by a "tipster" unknown to the defendant. After determining that the tipster had not provided any information included in the reports prepared by the IRS agents working on the case, and that the tipster had received neither payment nor consideration in exchange for the tip, the trial judge refused to disclose the tipster's identity to the defendant. *Id.* at 1026–27. In affirming the trial judge's decision, we noted:

> "The confidentiality of informers serves an important law-enforcement interest, especially in 'victimless' crimes such as tax evasion. This interest must be balanced against the defendant's interest in developing an effective defense. *See Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957). Where the informer is a mere 'tipster,' disclosure of his identity will rarely be appropriate under the balancing test of *Roviaro.* ... The mere tipster plays a potentially important role in uncovering tax evasion yet only a small role in the actual prosecution; hence the balance tips against disclosure."

*Id.* at 1027. The facts in this case are remarkably similar to those in *Lewis.* Our review of the record reveals that the informant in this case was a mere tipster, who was not compensated for the information he or she provided. In addition, the tipster's information—namely, that an accidentally opened envelope containing a light brown powder had been received at Scanner Services—had to be independently corroborated by St. John before it was of any value to the FBI and, even then, merely provided the starting point for the investi-

gation precipitating the defendant's arrest. Indeed, probable cause to arrest Mayomi did not exist until after St. John had initiated extensive surveillance of the defendant's mailbox during the controlled delivery of the three envelopes, and observed the defendant pick up the envelopes and place them in his car. Under circumstances very similar to those in this case, the Fifth Circuit, in *United States v. Alexander*, 559 F.2d 1339, 1344 (5th Cir.1977), *cert. denied*, 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1978), held that the defendant in that case had no right to compel the disclosure of the government informant's identity. We agree. The factual situation presented herein reveals that the tipster's information played an important role in the FBI's discovery of the defendant's drug-related activities, but a minimal role in the arrest and prosecution for those activities. We agree with the trial court's ruling that the defendant failed to establish any pressing reason for the court to allow the defendant to cross-examine Ashton as to whether he was the government informant[8] and hold that it was not an abuse of discretion to limit the cross-examination of government witnesses on this subject.

■ We reach a similar conclusion regarding the defendant's contention that the district court erred in precluding cross-examination of Ashton on his relationship with Agent St. John in investigations prior to the present case. "[T]he decision to not allow cross-examination of a witness concerning investigations other than those related to the case on trial falls within the discretion of the district court." *Silva*, 781 F.2d at 110 (*citing United States v. Murphy*, 768 F.2d 1518, 1536 (7th Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986)).

In this case, the district judge ruled not to allow questioning about Ashton's relationship with St. John in previous FBI investigations because defense counsel failed to establish that such questioning was either necessary or relevant to the real issues in the case: namely, whether the defendant knowingly attempted to possess, possessed and imported heroin. Both at trial and on appeal the defendant argues that this line of questioning was relevant and necessary because the absence of information on Ashton's prior relationship with the FBI made it impossible for the jury to reach an informed decision regarding Ashton's credibility. We disagree.

The Supreme Court, in *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15, 19 (1985) (*per curiam*), stated that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original). The record reflects that Mayomi's attorney cross-examined Ashton extensively on his encounters with

---

**8.** The defendant makes a feeble effort to salvage this argument by asserting that he was entitled to question the government's witnesses on the identity of the informant because "he suspected, with good reason, the veracity of St. John's affidavit [in support of the search warrant]." As the government points out in its brief, the defendant failed to file with the district court a motion pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), challenging the search warrant affidavit on the basis that St. John knew of, or recklessly disregarded, falsehoods in the information in the affidavit. The defendant attempts to excuse his failure to file a *Franks* motion by stating that he was trapped in a "Catch 22"—that is, he questioned the veracity of St. John's affidavit, but did not have sufficient facts to support a motion for a *Franks* hearing. From the record before us it is obvious that the defendant lacks sufficient facts to support his speculative assertion that St. John's veracity should be called into question.

In any event, we agree with the statement of the Tenth Circuit that:

"the Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957), ... acknowledged the public's interest in protecting the identity of confidential informants in order to encourage the flow of information necessary in criminal prosecutions.... [T]he public's interest, as recognized in *Roviaro*, imposes procedural requirements and evidentiary burdens on a defendant who requests the disclosure of the confidential informant."

*United States v. Bloomgren*, 814 F.2d 580, 584 (10th Cir.1987). Because the defendant failed to comply with the procedural requirements set forth in *Franks, supra*, he has waived the issue on appeal. We refuse to consider his attack on the search warrant in the context of his argument that the district court abused its discretion in limiting the cross-examination of the government witnesses.

the defendant at Scanner Services, the details of how and when he accidentally cut open the first envelope found to contain brown heroin, and his subsequent cooperation with the FBI in its investigation of the defendant.

From our review of the record we are convinced that the district court afforded the defendant ample opportunity to elicit sufficient information from Ashton concerning his involvement in this case such that the jury could make an informed decision regarding his credibility as a witness.[9] The question of whether Ashton had been involved in previous FBI investigations was, at best, only marginally relevant to the central issues in this case and a sojourn into this matter would have served only to confuse the jury on those issues.[10] As *Delaware v. Van Arsdall, supra,* teaches, a district court has wide latitude to impose reasonable limits on cross-examination based on concerns of this nature. Accordingly, we hold that it was not an abuse of discretion for the district court to preclude cross-examination of Ashton on this issue.

Even if we were to agree with the contention that the district court had abused its discretion in limiting the scope of the defendant's cross-examination of Ashton, which we do not, the Supreme Court has held that violations of the Confrontation Clause are subject to harmless error analysis. *Delaware v. Van Arsdall,* 475 U.S. at 681, 106 S.Ct. at 1436, 89 L.Ed.2d at 684. In light of the overwhelming evidence against Mayomi regarding his involvement in the importation and possession of heroin, we hold that any error in limiting the defendant's cross-examination of Ashton, with respect to either the identity of the informant or Ashton's previous involvement, if any, in FBI investigations, was harmless.

**9.** In fact, as we noted in note 3, *supra,* Mayomi's attorney failed to take full advantage of the opportunity he had by failing to ask Ashton whether he had cut open the first envelope at the direction of the FBI.

**10.** We note that the defendant's attempt to challenge the veracity of Ashton, as well as that of the government on a matter that should have been brought to the attention of the court in a *Franks* motion, *see supra* note 8, was nothing more than an attempt to confuse the jury on the

## IV.

The district court's refusal to suppress the contents of the envelopes addressed to the defendant was proper. The defendant's mail was detained only for short periods of time and for the sole purpose of confirming the presence of heroin therein. More importantly, the defendant's significant Fourth Amendment interest, the privacy of his mail, was not disturbed until a search warrant was obtained. Furthermore, the district court did not abuse its discretion in limiting the scope of the defendant's cross-examination of David Ashton. Mayomi failed to allege sufficient facts to entitle him to the identity of the FBI informant and to establish the relevancy of Ashton's involvement, if any, in previous FBI investigations. The judgment of the district court is

AFFIRMED.

real issues set for trial—namely, whether the defendant knowingly possessed, attempted to possess, and imported heroin. We caution trial counsel that such "fishing expeditions" are not viewed favorably by this court. Given the already overcrowded dockets of the federal judiciary, if the defendant actually had information that Ashton had been involved in previous FBI investigations, he should have made a proper offer of proof in the district court.