UNITED STATES of America, Plaintiff–Appellee,

v.

Jesse K. HALL, Defendant–Appellant.

No. 97–1898.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 3, 1997.

Decided April 23, 1998.

Frances C. Hulin, Timothy A. Bass (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Carol J. Reid (argued), Springfield, IL, for Defendant–Appellant.

Before CUMMINGS, COFFEY and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

On October 10, 1996, the defendant-appellant, Jesse Kevin Hall ("Hall"), was charged with knowingly possessing three or more visual images containing depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B). Hall's single-count indictment charged the defendant with transporting the images in interstate commerce by computer. The defendant entered a conditional plea of guilty, reserving the right to appeal the district court's denial of his motion to suppress evidence against him. Hall appeals the court's denial of his motion to suppress. We affirm.

## I. BACKGROUND

On November 7, 1995, the defendant took the central processing unit ("CPU") of his personal computer to CDS Office Technolo-

gies ("CDS") in Springfield, Illinois, for repairs. The following day, while in the process of repairing Hall's CPU, Richard M. Goodwin ("Goodwin"), a CDS employee, accessed several of the CPU's file directories to diagnose the problems with Hall's CPU. In so doing, Goodwin observed that a number of the files had unusual names; names which implied sexual content. For example, one of the files was titled "Boys 612."[1] Goodwin viewed this file and found that it contained a video image of two young naked boys engaged in actual or simulated anal sex. Based on their appearance and physical development, Goodwin estimated that the boys were between 10 and 12 years of age. Goodwin examined three or five other files and found that they also contained pornographic images of males in their youth. Goodwin gauged that there were a total of 1,000 video files on the CPU that had names implying child pornography. After Goodwin viewed the files, Hall telephoned CDS to inquire when his computer would be ready and how much the repairs would cost. Goodwin explained that it was likely that the CPU would require a video upgrade and that a CDS salesperson would contact him concerning the price. Goodwin did not reveal that he had viewed any of the pornographic files.

Following his conversation with Hall, Goodwin placed a call to his friend, Trooper Wayne Johnson ("Johnson") of the Illinois State Police, and told him what he had discovered on the computer. He described two or three of the images to Johnson, including the "Boys 6–12." Johnson asked Goodwin to copy several of the pornographic files onto a three-and-a-half-inch computer disk ("disk") in order to preserve the evidence. Goodwin copied the disk as requested and gave it to Johnson later the same day. However, neither Johnson nor any other law enforcement officer ever viewed the disk.

Johnson contacted Lieutenant Terry Wubker of the Illinois State Police, who in turn notified the FBI. On November 9, 1995, Goodwin was interviewed briefly by FBI Special Agents Dale Walker ("Walker") and

Thomas Gibbons ("Gibbons") at the offices of the Illinois State Police. Johnson and two other Illinois State Police officers were present during the interview. Later the same day, Goodwin was interviewed a second time by Walker and Gibbons, and at this time was accompanied by Warren Wilson ("Wilson") and Bruce Egolf ("Egolf"), CDS employees. During the meeting, the CDS employees agreed to assist the FBI in their investigation of Hall. Accordingly, Goodwin gave the agents Hall's home address, the location of his employment, and his home telephone number.

Following the meeting, Wilson called Hall to discuss the video upgrade of Hall's CPU. Hall requested that a new video graphics card be installed. Because the card would have to be ordered, Wilson estimated that the repair of the CPU would not be completed until the following week. Egolf then locked Hall's CPU in his office at CDS pending the outcome of the investigation. The FBI subpoenaed records from America On-Line ("AOL") reflecting that Hall subscribed to the service from February 22, 1995, through November 7, 1995. AOL also released Hall's mailing address, which matched the address Goodwin had given to Walker and Gibbons.

The video upgrade of Hall's CPU was completed on November 15, 1995. The same day, Walker obtained search warrants: one to search Hall's residence and another to search Hall's CPU. The affidavits supporting the search warrants recounted the facts that Goodwin had related to law enforcement, and stated that Johnson had instructed Goodwin to copy and transfer the pornographic files to the disk to preserve the evidence. The affidavits did *not* rely on the copied files in establishing probable cause. At the request of the FBI, Wilson also agreed to retain the CPU until the following day in order that an expert from FBI headquarters could view the pornographic files.

At 8 a.m. on November 16, 1995, the first warrant, allowing law enforcement officers to search Hall's CPU, was served at CDS. FBI

---

**1.** Goodwin believed that the files had been downloaded from America On-Line because they appeared in Hall's America On-Line directory.

Special Agent Michael Randolph ("Randolph") confirmed that the CPU in question contained child pornography. At approximately 9 a.m., Hall arrived at CDS and picked up his CPU. He left the store and was confronted by FBI agents as he approached his car. The agents seized the CPU, and advised Hall that he was not under arrest, and that he was free to leave if he so desired. Hall was advised that the FBI's investigation into the illegal transmission and receipt of child pornography had revealed that Hall was in possession of various pornographic items. Hall admitted that he had obtained child pornography through his AOL account, and signed a written consent form which allowed the agents to search his residence and his computer. At Hall's residence, the agents seized 42 disks, three of which contained child pornography. After an inventory review and inspection of the CPU and disks, 403 files were found to contain visual depictions of minors engaged in explicit sexual conduct. Many of the pornographic files contained in the CPU depicted prepubescent minors, or minors under the age of 12. ·

On October 10, 1996, Hall was indicted for knowingly possessing images, transported in interstate commerce, which contained visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). The statute provides:

(a) Any person who-

(4) either (B) knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if-

(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(ii) such visual depiction is of such conduct;

shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252. On December 3, 1996, Hall filed a motion with the district court to suppress the Government's evidence of child pornography. Hall contended that the Government's search warrants were invalid since they were supported by an insufficient amount of evidence to establish probable cause and were based on discoveries made by an agent of the Government. At the suppression hearing on December 23, 1996, Hall's motion was denied. The district court found that: (1) Goodwin's actions leading to the discovery of the material on Hall's CPU constituted a private search; (2) there were separate warrants to search the CPU and Hall's residence; (3) there was probable cause to issue the warrants; and (4) the CPU was not unreasonably detained. Hall entered a conditional plea of guilty, reserving the right to appeal the denial of his motion to suppress evidence. At sentencing, Hall objected to various presentence report ("PSR") findings. These included the imposition of two separate two-level enhancements under U.S.S.G. §§ 2G2.4(b)(1) and (b)(2) for possession of material involving a prepubescent minor and possession of ten or more items containing a depiction involving the sexual exploitation of a minor. The district court, after overruling Hall's objections, found him guilty of possessing child pornography and sentenced him to 15 months imprisonment, three years supervised release, and a $50 special assessment fee. Hall appeals the district court's denial of his motion to suppress evidence and his sentence enhancements.

## II. ISSUES

On appeal, Hall contends that the district court erroneously denied his motion to suppress evidence. Specifically, Hall claims that: (1) the evidence was discovered in violation of the Fourth Amendment by an agent of the Government; (2) his Fourth Amendment rights were violated when the content of his computer files were released to the police without his consent; (3) insufficient probable cause existed for the search warrants; (4) the warrants violated his First Amendment rights because they gave law enforcement the authority to search and seize non-obscene material; and (5) the unlawful warrants invalidated his subsequent

consent to the search of his residence and his computer. Hall also contends that the district judge erred in increasing his base sentence level by two levels, arguing that visual depictions on a computer do not constitute pornographic "matter" as defined under 18 U.S.C. § 2252(a)(4)(B) and are not considered as "items" or "material" for purposes of the sentencing guidelines.

## III. DISCUSSION

### A. The Court's Denial of the Motion to Suppress Evidence

■ Initially, the defendant contends that the district judge erred in denying his motion to suppress evidence. This Court reviews the district judge's factual findings on a motion to suppress evidence under the clearly erroneous standard. *See United States v. Talkington*, 843 F.2d 1041, 1045 (7th Cir. 1988). Questions of law and mixed questions of law and fact, however, are subject to *de novo* review. *See United States v. Duguay*, 93 F.3d 346, 350 (7th Cir.1996).

### 1. The Evidence Was Discovered by Private Search

■ The defendant claims that the evidence that provided probable cause for the issuance of the search warrants was discovered by Goodwin acting as an agent of the Government. Hall contends that Goodwin's search was unreasonable because he did not have a warrant to search Hall's CPU. Although individuals have a right under the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures by the Government, *private searches* are not subject to constitutional restrictions. *See generally United States v. Feffer*, 831 F.2d 734 (7th Cir.1987). The Fourth Amendment "is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984) (citation and internal quotation omitted). "When determining whether a private citizen has acted as a government agent, the question is whether in light

of all the circumstances of the case [the person] must be regarded as having acted as an *instrument or agent* of the state...." *United States v. McAllister*, 18 F.3d 1412, 1417 (7th Cir.1994) (citation and internal quotations omitted). The Court is called upon to determine whether: (1) the Government knew of and acquiesced in the intrusive conduct; and (2) the private party's purpose for conducting the search was to assist law enforcement efforts or further his own ends. *See id.* (citation omitted). Another consideration is whether the Government offered the private party a reward. *See id.* at 1417–18 (citations omitted).

■ Goodwin's search of Hall's CPU, which involved the viewing of several of Hall's computer files, was made pursuant to the maintenance work Goodwin had performed in his capacity as a technician for CDS. The Government had no knowledge that Goodwin was going to repair Hall's computer and thus, did not instruct Goodwin to inspect the files. Goodwin did not contact the Government until after the evidence was discovered. The search was initiated by Goodwin, and was completed in the normal course of CDS's business, with the sole purpose of testing Hall's CPU. Therefore, the Fourth Amendment is inapplicable both to Goodwin's search, and to his later description of the pornographic evidence to law enforcement officials.

■ The Government conceded that the copying of the files by Goodwin, at Trooper Johnson's request, constituted a warrantless search. However, the copied disk was never reviewed by law enforcement, nor was it used as a basis of reasonable suspicion in the affidavit supporting the search warrants. The Government contends that the "issuance of the search warrants for the defendant's CPU and residence, however, was independent of any instruction by Johnson." The Government in its argument embraces the Supreme Court's reasoning in *Nix v. Williams*: "[t]he independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." 467 U.S. 431, 443, 104 S.Ct. 2501, 2508, 81

L.Ed.2d 377 (1984). We have previously held that independently discovered and untainted evidence will be admitted in certain circumstances as an exception to the exclusionary rule. "[T]he independent source doctrine provides that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced *by putting the police in the same, not a worse, position than they would have been in if no police error or misconduct had occurred.*" *United States v. Gravens,* 129 F.3d 974, 981 (7th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1333, 140 L.Ed.2d 494 (1998) (citation and internal quotation omitted). "When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." *Nix,* 467 U.S. at 443, 104 S.Ct. at 2509. In the case under consideration, Goodwin's statements to law enforcement personnel formed a sufficient basis of probable cause to support the search warrants. With lawfully issued warrants, the same files that Goodwin copied onto the disk for Johnson were independently discovered by the Government during the search of Hall's CPU and home. In addition, once the CPU warrant was executed, Hall consented to the search of his apartment. While the Government concedes that the copying of the files was warrantless, the search warrants were issued independently of any instruction by Johnson. No information from the copied files was used to establish probable cause to issue the search warrants. Goodwin had already viewed the files on Hall's CPU before speaking to Johnson. Under the independent source doctrine, the warrants and Hall's consent support the admissibility of the evidence.

*2. Detention of the CPU Was Non–Governmental and Not Unreasonable*

■ Hall next contends that CDS detained the CPU at the Government's direction for an unreasonable period of time. CDS detained the CPU for one extra day while the FBI obtained search warrants for Hall's home and his computer files. The district judge found the CPU had not been detained unreasonably by CDS: "Defendant asked CDS to repair, improve, or upgrade the video capacity on his computer. Both Goodwin and Warren Wilson ... stated that it normally took approximately four days for the [new graphics] card to arrive and to be installed."

This Court has previously held that a limited detention of evidence, even by the Government, is not unreasonable if based on reasonable suspicion. *See United States v. Mayomi,* 873 F.2d 1049 (7th Cir.1989). In *Mayomi,* we held that a two-day detention of evidence was reasonable when based on adequate suspicion. *See id.* at 1054. "[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion. Moreover, in assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation." *United States v. Place,* 462 U.S. 696, 709, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983).

> Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present.

*Id.* 462 U.S. at 701, 103 S.Ct. at 2641 (citations omitted). In the case under consideration, Hall requested that CDS perform various repairs to his CPU. After the evidence of child pornography had been discovered through a routine inspection of the computer required to diagnose the nature of Hall's problem, Hall requested that CDS perform the graphics upgrade. When CDS completed the upgrade and was preparing to return the CPU to Hall, the FBI asked CDS to hold the computer for one additional day in order for an expert law enforcement official to arrive to view and evaluate the pornography. In light of our holding in *Mayomi,* we agree that a one-day (temporary) detention is reasonable.

The defendant's reliance on *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), to show a Fourth Amendment violation is misplaced. The facts of *Walter* are distinguishable from those in our case. In *Walter*, the Supreme Court held that the unauthorized viewing of pornographic films by law enforcement was a violation of the defendant's constitutional right to privacy on the grounds that the officers had failed to obtain a search warrant before conducting their search and in view of the fact that the defendant had not consented to law enforcement's detention of the evidence. *See* 447 U.S. at 657, 100 S.Ct. at 2402. In our case, Goodwin's search was made during his employment with CDS, incident to his assigned duties as he made repairs to Hall's computer at Hall's request. Thus, the search was obviously a private search since it was not carried out by law enforcement officers, nor was it conducted under their direction; for Goodwin had not had any contact with law enforcement concerning Hall prior to the search. Furthermore, Hall gave his consent that CDS, a private entity, retain the CPU while the graphics upgrade was completed. CDS retained, repaired, and inspected the CPU in the ordinary course of business. The Government did not view the files contained in the CPU until a search warrant had been issued, and never viewed the disk that Johnson improperly asked Goodwin to copy. Thus, the CPU was not detained for an unreasonable period of time (one day), was not detained by a Government agent, and the disk copied by Goodwin at Johnson's request was never viewed by law enforcement officers.

### 3. Probable Cause Existed for the Warrants

▮▮▮▮ Contrary to the district judge's ruling, the defendant next contends that there was insufficient probable cause to support the search warrants. The affidavit in support of the search warrants cited Goodwin's estimate that the CPU contained approximately 1,000 files with names indicative of child pornography. Goodwin also stated that he viewed three to five files that depicted minors engaged in sexual activity, and described at least two of those depictions to Trooper Johnson. The affidavit also contained expert information addressing the common practices of child pornographers. Specifically, the affidavit stated that pornographers tend to maintain their collections of material for long periods, usually at home. In order for sufficient probable cause to exist to support law enforcement's suspicion that a crime has been committed, evidence in police affidavits must show a "fair probability that contraband or evidence of a crime" will be found in the location identified in the search warrant. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Under 18 U.S.C. § 2252(a)(4)(B), one can be charged for possessing three or more matters containing visual depictions of a minor engaged in sexually explicit conduct. Goodwin viewed between three and five images depicting child pornography and saw approximately 1,000 files with names which he felt referred to child pornography. We hold that this showing demonstrates more than a "fair probability" that criminal evidence would be discovered in Hall's CPU and at Hall's residence, and is thus sufficient to support the issuance of the search warrants.

### 4. The Warrants Were Written with Sufficient Particularity

▮▮▮▮ Hall maintains that the two search warrants were issued in violation of the First Amendment of the United States Constitution because they granted authority for law enforcement agents to search and seize non-obscene material, beyond the scope of the two or three depictions that Goodwin initially reported to law enforcement. Attachment A to the affidavit supporting the search warrants authorized the agents to seize

[h]ardware, computer disks, disk drives, internal modems, tape drives, disk application programs, data disks, system disk operating systems ... which may be, or are used to visually depict child pornography, child erotica, information pertaining to the sexual interest in child pornography, sexual activity with children or the distribution, possession or receipt of child pornography, child erotica or information pertaining to

an interest in child pornography or child erotica....

[c]omputerized or other materials and photographs depicting sexual conduct, whether between adults or between adults and minors.

The defendant argues that the warrants

didn't limit seizure of items that were used to depict child pornography; they authorized seizures of items that "may" be used to depict child pornography. They also didn't limit the seizure of disks or other items depicting child pornography, but they authorized the seizure of any pornography, adult or child, legal or illegal.

The Government contends that because this issue was not raised before the district court, it is forfeited. We agree. *See United States v. Perez,* 43 F.3d 1131, 1135–36 (7th Cir.1994) (matters not raised in trial court proceedings are deemed forfeited and subject to review only for plain error). Thus, Hall has waived this argument by failing to present it to the district judge. Even if we considered the defendant's contention that the search warrants were drafted in violation of the First Amendment by allowing law enforcement officials to seize obscene and non-obscene material, we have previously held that search warrants will be upheld if they are "sufficiently specific." The Fourth Amendment prohibits the issuance of general warrants allowing officials to burrow through a person's possessions while looking for evidence of crime. *See Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). This Court has previously held that "[t]he requirement that search warrants particularly describe the things to be seized is a bedrock of Fourth Amendment jurisprudence, and when the basis for a seizure is the ideas contained therein, the most scrupulous exactitude is required in crafting the warrant." *Supreme Video, Inc. v. Schauz,* 15 F.3d 1435, 1439 (7th Cir.1994) (citation and internal quotation omitted). We recognize that "it is the magistrate who is authorized under present case law to exercise discretion in the issuance of the warrant and 'nothing is left to the discretion of the officer executing the warrant....'" *Hessel v. O'Hearn,* 977 F.2d 299, 306 (7th Cir.1992) (Coffey, J., concurring) (quoting *Horton v. California,* 496 U.S. 128, 144, 110 S.Ct. 2301, 2312, 110 L.Ed.2d 112 (1990)).

To determine whether a specific warrant meets the particularity requirement, a court must inquire whether an executing officer reading the description in the warrant would reasonably know what items are to be seized. *See United States v. Layne,* 43 F.3d 127, 132 (5th Cir.1995) (citation omitted). If detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized. *See id.* (citation omitted). As the defendant points out, where law enforcement's purpose is to seize material presumptively protected by the First Amendment, the items to be seized must be described in the warrant with increased particularity. *See generally Marcus v. Search Warrants,* 367 U.S. 717, 731, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961).

A warrant that generally describes items to be seized as those that were "obscene, lewd, lascivious or indecent" was "too general to support the seizure of material that was at the time of the seizure, arguably protected by the First Amendment." *United States v. Hale,* 784 F.2d 1465, 1469 (9th Cir.1986). In contrast, the Fifth Circuit upheld a search warrant as "particular enough" where it referred to the items to be seized generally as "child pornography." The court reasoned that the term was specific enough to inform the police officers executing the warrant of the types of items that could reasonably be seized. *See Layne,* 43 F.3d at 133. Similarly, in *United States v. Hurt,* the Ninth Circuit found a search warrant to be "particular enough" where it authorized the search of material "depicting minors (that is, persons under the age of 16) engaged in sexually explicit activity." 808 F.2d 707, 708 (9th Cir.1987). The court reasoned that the words used in the warrant described the material sought in such a way that no expert training or experience was needed to clarify and limit their meaning. *See id.*

In the case under consideration, we hold that the search warrants were written with sufficient particularity because the items listed on the warrants were qualified by phrases that emphasized that the items sought were

those related to child pornography.[2] This included such phrases as "child pornography," "minors engaged in sexually explicit conduct," and "sexual conduct between adults ... and minors." Police officers executing the warrants were not unguided and free to rummage through Hall's property. *See Andresen,* 427 U.S. at 480, 96 S.Ct. at 2748. The words of the warrant needed no explanation to clarify their meaning. *See Hurt,* 808 F.2d at 708.

### 5. Lawful Warrants Did Not Invalidate Hall's Consent

Finally, the defendant contends that his motion to suppress the evidence should have been granted by the trial judge because the allegedly unlawful search warrants, lacking in probable cause and based on an improper Government search, invalidated the defendant's subsequent consent in allowing law enforcement to search his residence and his computer. However, as discussed above, the warrants were lawful, and thus, Hall's subsequent consent was not invalidated. The Government argues that because Hall did not raise this issue before the district court, the matter is waived. As discussed earlier, we held in *United States v. Perez* that matters not raised in trial court proceedings are deemed forfeited and subject to review only for plain error. *See* 43 F.3d at 1135–36. Thus, the defendant has waived this argument by not presenting it to the district judge. Even if we considered the defendant's claim, though, we have previously concluded that the evidence supporting the warrants arose from a private search, and held that there was more than sufficient probable cause in the affidavits gleaned from the testimony of Goodwin for the issuance of the warrants. We are convinced that the warrants were lawfully issued, and Hall's subsequent consent was not invalid.

■ During oral argument, the defendant also argued that, for the purposes of 18 U.S.C. § 2252(a)(4)(B), he did not "knowingly possess" the child pornography discovered on the CPU and disks. Hall contends that the computer files containing the pornography were transferred to his computer without his knowledge, and that he did not wish to possess the files. The defendant equates his situation to that in which one views images on a television screen; the nature of the images that appear on the screen is not controlled by the viewer. We hold, however, that the defendant's television analogy is incomplete in that one does not possess the images he views on a television screen. Hall had every opportunity to delete any computer files that he did not wish to retain. Since the defendant himself downloaded the files into the computer's memory, we hold that Hall's argument is without merit and fail to understand how he can argue that he did not knowingly possess the files. Furthermore, since the defendant did not raise this issue before the district judge or in his brief, we will not further consider it at this point. *See id.*

### B.  The Sentence Enhancements

■ The defendant next argues that the sentence enhancements leveled by the district judge were improper. A defendant's sentence will be affirmed unless, after reviewing the evidence, it is found that the application of the sentencing guidelines to the facts was clearly erroneous. *See United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989).

■ Under U.S.S.G. § 2G2.4(b)(2), a base level offense may be increased two levels if "the offense involved possessing ten or more books, magazines, periodicals, films, video tapes, or other *items,* containing a visual depiction involving the sexual exploitation of a minor ...." (emphasis added). Hall concedes that he possessed more than 10 visual depictions, but maintains that a visual depiction is not an "*item.*" Rather, he argues that the only "*items*" he possessed were the three individual disks, which he claims should not subject him to the sentence enhancement dictated in this provision. Furthermore, under U.S.S.G. § 2G2.4(b)(1), a base level offense can be increased an additional two levels if "the *material* involved a prepubescent minor or a minor under the age of twelve years ...." (emphasis added). Simi-

---

**2.** *See supra,* p. ——, for language of affidavit in support of search warrant.

lar to his argument concerning § 2G2.4(b)(2), Hall contends that the only *"material,"* as defined under § 2G2.4(b)(1), which he possessed were the three individual disks, and that these did not contain depictions of children under the age of 12. He also argues that his computer cannot be considered to be *"matter"* in the statute under which he was charged, 18 U.S.C. § 2252(a)(4)(B),[3] but is instead a "container," and that visual depictions are not recognized to be *"matter"* under that statute. However, the Tenth Circuit has previously rejected the contention that a computer is only a "container" for files. *See Davis v. Gracey,* 111 F.3d 1472 (10th Cir.1997). In *Davis,* the Tenth Circuit recognized that a computer could have several functions, including the storing, distributing, and displaying of computer files. *See id.* at 1480.

Even accepting Hall's logic that the computer was only the "container" of the matter for the purposes of the statute, we must determine whether the files stored within the computer, which contained the depictions, may be considered "matter," "items" or "material." Because the Internet has only recently been commonly used to transport and transfer visual images, this issue has not been specifically addressed by this Court. However, other courts have explicitly found computer files to be "matter which contains depictions" under 18 U.S.C. § 2252(a)(4)(B). For example, in *United States v. Lamb,* 945 F.Supp. 441, 451 (N.D.N.Y.1996), a defendant similarly charged under 18 U.S.C. § 2252(a)(4)(B) claimed that files transmitted over AOL were not "visual depictions" within the meaning of the statute. To reach its conclusion, the court reviewed the process of computer distribution of child pornography. In order to distribute images by computer, the images are

> scanned or transferred to a computer by a number of technological means, including digital cameras, flatbed scanners, and video capture cards. The images are converted into ... image file formats .... These files can then be transmitted over a modem to other computers. Another pro-

gram known as a viewer is required to display the image files as actual pictures on the monitor ....

*Id.* Although "visual depiction" is explained in the definition section of the statute as that which includes "undeveloped film and videotape," the *Lamb* court observed that the definition does not exclude other media, specifically photographs. *See id.* The court reasoned that "the explicit reference to media of a type that requires additional steps and equipment before the images they contain can be viewed supports the proposition that Congress intended to sweep the type of transmission at issue here within the ambit of the statute." *Id.* The court acknowledged that computer data stored on disk is not, in and of itself, a "visual depiction," because a computer must first translate the visual image from the computer data. However, a videotape image, similar to a computer image, is recorded magnetically on a reel of plastic tape, and can be viewed only with the aid of a videotape player and television. *See id.* Since 18 U.S.C. § 2252(a)(4)(B) specifically provides that videotape images are "matters," the court ruled that Congress intended computer images to be included within the definition of "matters" as well. We concur with the court's analysis. Furthermore, in *United States v. Goossens,* 84 F.3d 697 (4th Cir.1996), the Fourth Circuit upheld a trial judge's sentence of a defendant who had accessed data via the Internet to download computer files to his computer that depicted child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Similarly, in *United States v. Kimbrough,* 69 F.3d 723 (5th Cir. 1995), a sentence under the same statute was affirmed for a defendant who downloaded at least five files containing child pornography.

In the case under consideration, the district court's application of the sentencing guidelines was not clearly erroneous. The judge found that 393 computer files consisting of child pornography represented more than "10 ... other items [ ] containing a visual depiction involving a minor." In our opinion, Hall's pornographic "items" consisted of 403 individual computer files, separately stored on the computer. The district

---

**3.** The language of this statutory provision is addressed *supra,* pp. ———————.

court properly increased the base level offense by two levels under § 2G2.4(b)(2) because computer files are the equivalent of "items." In addition, the district judge did not commit clear error in finding that the computer files containing images of prepubescent minors were "other matter[s]" or "materials" under 18 U.S.C. § 2252(a)(4)(B) and U.S.S.G. § 2G2.4(b)(1). Although the statute does not define "other matter" or "materials," plain meaning suggests a prohibition of three or more of *anything* containing a visual depiction transported in interstate commerce. In this case, the "other matter" or "materials" are the 403 individually-named computer files Hall received in interstate commerce via AOL. Because the material involved a "prepubescent minor or a minor under the age of twelve years," U.S.S.G. § 2G2.4(b)(1), the district court properly increased the base level offense by two levels.

## IV. CONCLUSION

The district court did not commit error in denying the defendant's motion to suppress evidence. Hall knowingly downloaded 403 computer files containing child pornography from the Internet. Although the initial information supporting the search of Hall's CPU came as a result of Goodwin's private search of Hall's computer, Hall subsequently consented to the Government's search of his home and his computer. Furthermore, the court did not err in imposing sentence enhancements pursuant to the sentencing guidelines.

AFFIRMED.