**UNITED STATES of America,**
**Plaintiff,**

v.

**Jeffrey TUCKER, Defendant.**

**No. 2:98–CR–425C.**

United States District Court,
D. Utah,
Central Division.

May 4, 2001.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGEMENT

CAMPBELL, District Judge.

Defendant Jeffrey Tucker ("Tucker" or "Defendant") is charged under 18 U.S.C. § 2252A(a)(5)(B) with knowing possession of child pornography. The court held a bench trial on this matter on January 4, 2001 and enters the following findings of fact, conclusions of law, and judgement.

### Findings of Fact

There is little dispute about the facts of this case.[1] An admitted pedophile, Defendant was paroled from Utah State Prison on May 14, 1996, after completing a sentence for the sexual abuse of a child. Under the conditions of his parole, Tucker was specifically required to comply with all federal, state and municipal laws. Adult Probations and Parole Officer Kenneth England supervised Defendant on parole. After his release, Tucker lived and was employed in Salt Lake City by the United States Bureau of Reclamation.

Subsequent to his parole, Tucker used his computer to visit websites and newsgroups that gave him access to, and allowed him to receive images of, child pornography. Tucker visited these sites many times. Acting on information of a possible parole violation, parole officers conducted a search of Tucker's residence and computer on June 11, 1998. When the officers entered Tucker's home, they found his computer on and a newsgroup entitled

---

1. All of the facts recited here are from the trial transcript and exhibits admitted at the bench trial on this matter.

"alt.sex.preteen" on his computer screen. During the search, Detective Gruber, a Salt Lake City Police Officer who participated in the search, noticed that many images had been deleted from Tucker's computer that day. After waiving his right to counsel pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Tucker stated that on his computer he had viewed at least several hundred pictures of children between the ages of ten and twelve who were engaged in sexual acts and poses.

At trial, evidence was presented that Tucker had participated in several Internet newsgroups that allowed him to receive images of child pornography. To gain access to these sites, Tucker paid a membership fee for which he received a password. Tucker visited these sites often, and posted several messages on them. The evidence demonstrated that Tucker frequently had visited these sights to view at least five thousand pictures of child pornography. In an interview with Detective Ryan Atack, Tucker admitted visiting pornographic websites on the Internet and seeking out those that featured pornographic depictions of children. When initially visiting one of these Internet sites, Tucker would view a series of "thumbnail" pictures (smaller pictorial versions which may be enlarged) of the child pornography available on the site. Tucker would enlarge any picture he wished so that he could view for as long as he liked and then move on to the next image. During these sessions Tucker had the ability to show the material to others; he could also manipulate the images by enlarging them, and make hard paper copies by printing them. The images Tucker viewed were automatically stored on Tucker's computer cache file, which would enable Tucker to load the picture more quickly if he sought to view an image again.[2]

In the interview where Agent Atack was present, Tucker also admitted that on June 11, 1998, he had been looking at pornographic images of children who were between the ages of ten and twelve through newsgroups entitled alt/sex/preteens and alt/sex/erotica/teens. He further admitted that he had deleted his computer cache file on June 11, 1998, because it was something that he always did when he "was done." (Transcript of Bench Trial, January 4, 2001 [hereinafter "Tr."].) He stated that he always deleted the images that he had viewed once he was finished with them because "it's like there's always new ones." (Tr. at 105.) Even though Tucker made a practice of deleting the images saved in his cache file after a session of viewing, at least one was saved on his computer's c-drive in a file folder called "Xmission." (Tr. at 72, 81.) On another occasion Tucker either copied or attempted to copy two hundred and nine separate images to a floppy disk on his computer's a-drive. (Tr. at 82–4.) One of those images was then either copied on a disk in the a-drive or viewed by Tucker from a floppy disk on the a-drive. (Tr. at 84.) Tucker said that he did not save the images as a usual practice, but rather deleted them, because he could always access more.

Tucker's computer was seized pursuant to a parole search and was taken to the Salt Lake City Police Department and booked into evidence. Agent Dan Hooper from the Utah Department of Public Safety subsequently conducted a search and forensic examination of the computer. In this examination, Agent Hooper made an

---

**2.** When a website is viewed on the Internet some of its contents are automatically stored to the computer's drive in the cache file so that future visits to that site can load more quickly. The information that is stored in the cache file retains images from the website that was visited.

exact copy of Tucker's computer hard drive so as to preserve the original hard drive. In his investigation, Agent Hooper found numerous images of child pornography on the hard drive which depicted children engaged in sexually explicit conduct. These images were recovered from the Internet Explorer cache file and the Temporary Internet Files in the computer hard drive's recycle bin. Agent Hooper also found one image of child pornography, file 5–16–98, in the computer's c-drive—a location other than the cache file where images viewed from the Internet were stored by Tucker's computer.

### Conclusions of Law

Tucker is charged with knowing possession of child pornography under the pre-amended version of 18 U.S.C. § 2252A(a)(5)(B), which imposes criminal liability on an individual who:

> knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, shall be punished as provided in subsection (b).

18 U.S.C. § 2252A(a)(5)(B) (1997).[3] The parties have both stipulated that the images Tucker viewed on the Internet were "mailed, or shipped or transported in . . . interstate commerce." *Id.* Tucker further does not contest the fact that he viewed a number of visual depictions of child pornography on his home computer. He does contend that he is not subject to criminal

liability under the statute because he never "possessed" or "knowingly possessed" any child pornography. Because Tucker admits viewing the child pornography, and also concedes that the images viewed where "other material" constituting child pornography for the purposes of the statute, the only remaining questions to be resolved in this matter are: 1) whether Tucker had possession under 18 U.S.C. § 2252A(a)(5)(b) such that he is subject to criminal liability; and 2) whether such possession was knowing possession.

*I. Did Tucker "Possess" Child Pornography?*

 The word 'possess' means to own or to exert control over. The word 'possession' can take on several different, but related, meanings. The law recognizes two kinds of 'possession'—actual physical possession and constructive possession. A person who knowingly has *direct physical control over a thing* at a given time is then in actual possession of it.

O'MALLEY, GRENIG, AND LEE, FEDERAL JURY AND PRACTICE INSTRUCTIONS: CRIMINAL § 16.05, "Possession"—Defined (5th ed.2000)(emphasis added). "The term 'possess' means to *exercise authority, dominion or control over*" a given thing. DEVITT, BLACKMAR, AND O'MALLEY, FEDERAL JURY AND PRACTICE INSTRUCTIONS: CRIMINAL § 36.12, "Possess"—Defined (4th ed.1992)(emphasis added). "As so defined, possession means actual physical possession, just as having the drugs or weapons in one's hand, in one's home or other place under one's exclusive control." *County Court of Ulster County v. Allen,* 442 U.S. 140, 163 n. 21, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Black's Law Dictionary defines natural possession as "[t]he exercise

---

**3.** The current version of the statute eliminates the "3 or more" requirement and would impose liability on possession of "any" child pornography. *See* 18 U.S.C. § 2252A(a)(5)(B).

of *physical detention* or *control* over a thing...." BLACKS LAW DICTIONARY 1184 (7th ed.1999). "In order for an individual constructively to possess property, he must knowingly hold the power and ability to exercise dominion and control over it." *United States v. Culpepper,* 834 F.2d 879, 881 (10th Cir.1987) (citations omitted). "Constructive possession may be established by circumstantial evidence." *Id.,* citing *United States v. Massey,* 687 F.2d 1348, 1354 (10th Cir.1982). With regard to possession of contraband such as narcotics, the Tenth Circuit has also "defined constructive possession as 'an appreciable *ability to guide the destiny* of the'" contraband. *Id., quoting Massey,* 687 F.2d at 1354 (emphasis added).

▆▆▆ Given this definition, Tucker had possession of the child pornography. Tucker had control over the images he viewed on his computer due to the fact that he could *detain* them on his monitor as long as he liked and *control* them by, among other things, enlarging and manipulating them. While the images that Tucker received were on his computer screen, he could control them in many ways: he could copy them had he chosen; he could print them had he chosen; he could enlarge them and "zoom-in" on the pictures as he chose; he could show them to other had he chosen; and he could copy them to other directories—as he attempted to do with the 5–16–98 files found on his c-drive, outside of his cache file. It is true that when Tucker viewed the images, the site and its images were automatically saved on Tucker's cache file, and that Tucker did not play any role in this automatic operation other than gaining access to the websites and viewing child pornography; yet Tucker also demonstrated ultimate dominion and control over these images because he was able to destroy them by deleting them from his hard drive. That Tucker had possession is not only evidenced by his showing and manipulation of the images, but also by the telling fact that he took the time to delete the image links from his computer cache file. Logically, one cannot destroy what one does not possess and control. Indeed, the ability to destroy is definitive evidence of control.

On the issue of destruction, defendant cites dicta from *United States v. Hall* for the proposition that deletion of computer files relieves one from criminal liability for possession under the statute. *See Hall,* 142 F.3d 988, 997 (7th Cir.1998). In *Hall,* the Defendant had purposefully downloaded and saved child pornography on his computer hard drive and was charged with possession under a different provision, 18 U.S.C. § 2252(a)(4)(B). *See id.* At oral argument on appeal, the defendant argued that he merely viewed and did not possess child pornography, making an analogy between simply viewing television and viewing images on a computer accessing the Internet. *See id.* The *Hall* court observed "that the Defendant's television analogy is incomplete in that one does not possess the images he views on a television screen. Hall had every opportunity to delete any computer files he did not wish to retain." *Id.* The court then went on to find that the fact that Hall had downloaded the files containing child pornography surely evidenced possession. However, the dicta in *Hall* does not support defendant's contention; the *Hall* court specifically did not address what kinds of activity would constitute possession as it concluded that "since defendant did not raise this issue before the district judge or in his brief, we will not further consider it at this point." *Id.* The *Hall* court therefore did not reach the issue of whether activities such as Tucker's constitutes possession under 18 U.S.C. § 2252A(a)(5)(b), and offered no other guidance regarding what types of activities would constitute possession under this statute.

■ Counsel for Tucker argued that: "Defendant's contention is that he cannot 'possess' something which he didn't down load, copy or intentionally store and that he cannot possess something he pro-actively deleted from his cache file immediately after *he regained control of his computer from the Internet.*" (Def.'s Trial Br. at 4.) (emphasis added). This argument is faulty for at least two reasons. First, Tucker did not "regain[ ] control of his computer from the Internet." The Internet is not a nefarious force which "possessed" Tucker's computer; the Internet exercised no volition in this case. Tucker purposefully visited Internet sites for the express purpose of viewing child pornography. The "Internet" did not put these pictures on Tucker's computer monitor, Tucker did by entering the sites. The images would not have been saved to his cache file had Tucker not volitionally reached out for them. Second, there would have been no need for Tucker to delete the files containing child pornography had not his act of gaining access to the websites that offered access to child pornography caused the images to be stored on his cache file. Tucker's destruction of the images that were on his cache file—due to the fact that he purposefully

visited websites to view them—does not evidence an absence of volition on his part; in fact, it suggests just the opposite. Just as a possessor of illegal narcotics is not able to escape criminal liability for possession by throwing drugs out a window, a person who possesses contraband such as child pornography cannot escape criminal liability by destroying it. Destruction of contraband does not logically lead to the conclusion that one never possessed it; indeed, it leads to the exact opposite.

■ Tellingly, Tucker's counsel further argued, when discussing the Government's reconstruction of Tucker's cache file for evidentiary purposes, that: "The government's created science, however technical and amazing, cannot be allowed to place contraband in a person's hands *even after the person thought that he had destroyed the contraband.*" (Def.'s Trial Br. at 25.) (emphasis added).[4] This argument only strengthens the conclusion that Tucker possessed the images. Tucker could not rid himself of something that he did not possess—otherwise there would not have been the need to rid himself of it. It is also logically impossible to destroy contraband that one does not control. But for

4. Defense Counsel also contends that Congress distinguished between mere viewing and possession when it framed The Child Pornography Prevention Act. (Defendant's Trial Brief at 19.) However, passed pursuant to Congress's Commerce Power, the Act is intended to prevent the traffic in and consumption of child pornography. *See, e.g.,* 142 Cong. Rec. S11,838, 11,842 (daily ed. Sept. 30, 1996) (analysis of Act's intent to thwart proliferation of child pornography by prohibiting possession and reception included in Record). Moreover, Congress sought to quell the traffic in child pornography as a method by which to decrease the proliferation and escalation of pedophilia:

Child pornography stimulates the sexual appetites and encourages the activities of child molesters and pedophiles, who use it to feed their sexual fantasies. Law enforce-

ment investigations have verified that pedophiles almost always collect child pornography or child erotica. While some only collect and fantasize about the material without acting upon those fantasizes [sic], in many cases coming to the attention of law enforcement the arousal and fantasy fueled by child pornography is only a prelude to actual sexual activity with children. S.Rep. No. 358, at 12–13 (1996). Given this intent, it is untenable to argue that possession under the Child Pornography Prevention Act would not cover the activity of receiving and holding images on one's computer for the purpose of consumption and then deliberately destroying the evidence of one's consumption and possession. However, as discussed herein, Tucker "possessed" child pornography under the simple legal definition of the term.

his act of reaching out for the child pornography, Tucker would not have found himself in the position of needing to destroy the contraband on his computer's cache file. The ability to control is the *sine qua non* of the ability to destroy. Tucker had control and dominion over the images he viewed and destroyed; he detained them for his pleasure and he guided their destiny when he destroyed them; Tucker therefore had possession of child pornography.

## II. Did Tucker Possess Child Pornography Knowingly?

 18 U.S.C. § 2252A(a)(5)(B) mandates that criminal liability can only be found in cases where the accused "knowingly possesses" child pornography. 18 U.S.C. § 2252A(a)(5)(B). Counsel for Tucker also argued that he never "knowingly" possessed child pornography because the images were automatically stored on his cache file and Tucker purposefully deleted them when he discovered this fact. While the scienter requirement of § 2252A(a)(5)(B) has not been addressed by any court, the Court in *United States v. X–Citement Video, Inc.* found that the scienter requirement extended to every element of The Protection of Children Against Sexual Exploitation Act of 1977 which dealt with distribution, shipping, reproducing and receiving child pornography. *See* 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (discussing scienter requirement for 18 U.S.C. §§ 2251(a)(1) and (2)). In *United States v. Lacy,* the Court of Appeals for the Ninth Circuit held that to satisfy the mens rea requirement of 18 U.S.C. § 2252A(a)(4)(B), "the trial court had to instruct the jury that ... it must find that ... [the defendant] knew the depictions were on his disks and drive." 119 F.3d 742, 747 (9th Cir.1997). For the purposes of criminal possession, "knowingly" means that the defendant was conscious and aware of his actions, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident. DEVITT, BLACKMAR, AND O'MALLEY, FEDERAL JURY AND PRACTICE INSTRUCTIONS: CRIMINAL § 17.04, "Knowingly"—Defined (4th ed.1992).

As discussed above, the Internet did not cause the images to be on Tucker's computer; Tucker volitionally reached out for them. This is not a case of ignorance, mistake or accident. Tucker paid a user fee to gain access to these sites and received a password that would give him access to them. Tucker admits that he knowingly visited the websites and manipulated the images on his computer. Moreover, Tucker knew that the images were stored on his computer drive. The fact that Tucker repeatedly deleted his cache files after his multiple visits to sites offering child pornography evidences his scienter; Tucker would not know to delete the files from his computer if he did not know that they were on his computer drive. Defense counsel asserted that: "Absent knowledge by the Defendant that he was maintaining pornographic images on his computer, his mental state was innocent." (Def's Trial Br. at 36.) This is, indeed, true. Yet it is also the case that defendant "maintained" the images in his computer cache file from the time he viewed the images until the time he intentionally deleted them. He would not know to delete the files if he did not know that he possessed them. Tucker therefore knowingly possessed child pornography in violation of § 2252A(a)(5)(B).

## Judgement

For the reasons set forth above, the court concludes that Defendant Jeffrey Tucker knowingly possessed child pornog-

raphy and is GUILTY as charged under 18 U.S.C. § 2252A(a)(5)(B).