IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 9, 2005 Session

## STATE OF TENNESSEE v. KELLY MICHAEL PICKETT

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-C-1439     Steve Dozier, Judge**

_____

**No. M2004-00732-CCA-R3-CD - Filed October 3, 2005**

_____

After a bench trial, the Davidson County Criminal Court convicted the appellant of eleven counts of sexual exploitation of a minor, a Class E felony. The trial court sentenced him to an effective four-year sentence to be served as ninety days in the county workhouse at one hundred percent and the remainder on probation. The appellant appeals, claiming (1) that the sexual exploitation of a minor statute is unconstitutional, (2) that the evidence is insufficient to support the convictions because the State failed to prove that he "possessed" pornographic images as required by the statute and because the State failed to prove that the images were real as opposed to virtual; (3) that his convictions are multiplicitous; and (4) that the trial court erred by not sentencing him to full probation and by not granting him judicial diversion. Upon review of the record and the parties' briefs, we conclude that the offenses are multiplicitous and reverse the appellant's convictions for counts two through eleven. We also modify the sentence for count one to reflect that the appellant is eligible to receive applicable statutory credits.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed in Part, Modified in Part, Reversed in Part.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Mark C. Scruggs, Nashville, Tennessee, for the appellant, Kelly Michael Pickett.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Bernard McEvoy and Brian Holmgren, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

Allen J. Birney testified that he had known the appellant for twenty years and that in October 1999, the appellant moved his computer to Mr. Birney's apartment. The computer had Internet access, and the appellant would come over to Mr. Birney's apartment to use the computer. Mr. Birney stated that he also used the computer occasionally. One night, Mr. Birney walked by the appellant's computer while the appellant was using it and saw something unusual on the computer screen. Mr. Birney asked the appellant, "[W]hat's that?" The appellant "clicked out of it" and said, "[O]h, nothing." A few days later, Mr. Birney checked the computer, accessed some files in the My Documents folder, and found pictures of naked children. He estimated that more than one hundred pictures were present and said that he confronted the appellant and told him either to delete the pictures or move the computer out of Mr. Birney's home. The appellant told Mr. Birney that a friend had electronically-mailed (e-mailed) the pictures to him. According to Mr. Birney, one of the pictures showed two boys, who appeared to be under eighteen years old, having oral sex. He said the other pictures showed naked children but did not show them engaged in sexual activity.

Detective Robert Carrigan of the Metropolitan Nashville Police Department's Youth Services Division testified that in 2002, he received information that the appellant may be involved in child pornography. On May 1, 2002, Detective Carrigan spoke with Allen Birney, and Mr. Birney gave the detective two items that the appellant had left in Mr. Birney's home. One of the items was a videotape titled "Cherry Poppers Number Five." The second item was a story printed from "BoysTales.com" that detailed an adult male having sex with a teenage boy. On June 13, 2002, Detective Carrigan and Detective Grant Carroll went to the appellant's home, spoke with him briefly, and asked for consent to search his computer. The appellant told the detectives that he "had an idea of what [they] were there about" and consented to the search. Detective Carrigan asked the appellant if any sexual pictures involving children were in the appellant's computer, and the appellant stated that there could be about twenty pictures. The appellant told Detective Carrigan that he had received e-mails about child pornography Internet websites and that he visited the websites in order to see what they were. According to the appellant, he saved the website addresses in his computer so that he could turn them over to the police.

On cross-examination, Detective Carrigan acknowledged that when a person visits an Internet website, images from the website may be stored automatically in the computer's temporary Internet file. He also acknowledged that a person would not have to actively download the pictures in order for them to be stored on the computer's hard drive. He said that he never got a chance to ask the appellant if the appellant had downloaded the pictures.

Detective Grant Carroll of the Metropolitan Police Department testified that in June 2002, he assisted Detective Carrigan with a search of the appellant's residence. The appellant consented to the detectives searching his computer, and Detective Carroll conducted a "presearch" that consisted of manually exploring the computer's memory. In the computer's temporary Internet file, Detective Carroll found a picture of a prepubescent teenage girl in a lacivious pose and a picture of three naked girls in their early teens in lacivious poses. Based on the pictures, the detectives seized the appellant's computer. Detective Carroll stated that if a person used a computer to visit an

Internet website, pictures from the website could be stored automatically in the computer's temporary Internet file.

Detective Stanley L. Mitchell of the Metropolitan Police Department's Computer Forensic's Laboratory testified that he searched the appellant's computer and made a mirror image copy of the computer's hard drive. He then searched the copy for evidence. Detective Mitchell recovered numerous pictures from the computer's temporary Internet folder. He explained that a temporary Internet folder is a file into which images from an Internet website are automatically stored when a person visits the website. He said that he also found at least one hundred pictures in the computer's "unallocated space." According to Detective Mitchell, the storage of pictures on the appellant's computer hard drive could have resulted from the appellant's having visited pornography websites or by having downloaded the pictures from the websites. He said that he printed sixty-four "thumbnail" pictures from the computer's unallocated space and that he was able to tell from the computer's Internet history and it's temporary Internet file that the appellant had visited many child pornography websites between May 20 and June 13, 2002. The State introduced into evidence a computer printout showing all of the Internet websites that the appellant visited during that period of time. The websites included "www.ohboys.com," "www.boysdaily.com," "www.nastyboys.com," and "www.gay-boy-sex.com."

Detective Mitchell testified that the pornographic pictures could have ended up in the computer's unallocated space when the appellant visited child pornography websites. He stated that the pictures also could have ended up in the unallocated space because the appellant actively downloaded them from the Internet, because someone gave him the images on a floppy diskette, or because someone e-mailed the pictures to him. In Detective Mitchell's written report, which was introduced into evidence, he explained as follows:

> There were numerous images of juveniles (clothed and unclothed), the majority being male, found in the **Temporary Internet Folder** and **Unallocated Space**. The **Temporary Internet** Folder, sometimes referred to as a cache folder, stores graphics from web sites that are visited by the computer user. This is done automatically without any input from the computer user. This folder saves the graphics so that the next time that the computer user visits the web site, the loading of the web site will be faster because the graphic files are already on the computer. The images found in **Unallocated Space** may be remnants of a former **Temporary Internet Folder**, or may have been images saved by the user to the hard drive and deleted at an earlier time.

On cross-examination, Detective Mitchell stated that he found most of the pictures in the computer's unallocated space. He acknowledged that he could not tell if the pictures in the unallocated space came from the computer's temporary Internet folder or were actively downloaded onto the computer's hard drive. He acknowledged that the pictures could have ended up in the unallocated space simply by the appellant's surfing child pornography sites on the Internet and that

-3-

the pictures could have been stored there without the appellant's knowledge. He said that he could not state with one hundred percent certainty that the images were photographs of actual children as opposed to computer-generated images. However, he stated that it was improbable that the images were computer-generated.

The appellant was charged with eleven counts of sexual exploitation of a minor based on eleven pictures that were recovered from his computer. According to the indictment, the offenses occurred between January 1 and July 13, 2002. In finding the appellant guilty of all eleven counts, the trial court stated that the pictures appeared to be images of actual children, not computer-generated. The appellant had argued to the trial court that he did not "knowingly possess" the pictures, as required by the statute, because he did not actively download them onto his computer hard drive. However, the trial court, citing United States v. Tucker, 150 F. Supp. 2d 1263 (D. Utah 2001), concluded that the appellant did not have to download the pictures intentionally in order for him to have knowingly possessed them. In finding that the appellant knowingly possessed the pictures, the trial court stated,

> The Court is of the opinion that the images that the defendant viewed were automatically stored on the computer's cache file which would enable the defendant to load the picture more quickly if he sought to view the image again. There is no doubt that the defendant had control over the images he viewed on his computer due to the fact that he could detain them on his monitor as long as he liked by, among other things, enlarging them and manipulating them. The Internet did not cause the images to be on the defendant's computer. The defendant voluntarily reached out for them on numerous occasions. The defendant admitted that he knowingly visited the websites and many of the websites obviously would contain sexually related material of minors. As Detective Carrigan testified, the defendant stated that he planned to turn the images over to the authorities. Prior to providing an item to the authorities, it follows that one must know that they possess the item before being able to turn it over to the authorities.

(Footnote omitted).

## II. Analysis

### A. Constitutionality of the Statute

The appellant claims that the sexual exploitation of a minor statute is unconstitutional on its face because subsection (a) fails to distinguish between real versus virtual child pornography and because subsection (b) unconstitutionally shifts the burden of proving that the images are not real

to a defendant. The appellant also claims that the statute is unconstitutional as applied to him. The State argues that the statute is constitutional. We agree with the State.

According to the sexual exploitation of a minor statute, Tennessee Code Annotated section 39-17-1003,

> (a) It is unlawful for any person to knowingly possess material that includes a minor engaged in:
>
> > (1) Sexual activity;
> >
> > (2) Simulated sexual activity that is patently offensive.
>
> (b) In a prosecution under this section, the trier of fact may infer that a participant is a minor if the material through its title, text, visual representation or otherwise represents or depicts the participant as a minor.
>
> (c) A violation of this section is a Class E felony.

"Minor" is defined as "any person who has not reached eighteen (18) years of age." Tenn. Code Ann. § 39-17-1002(3). "Material" is defined as

> (A) Any picture, drawing, photograph, motion picture film, videocassette tape or other pictorial representation;
>
> (B) Any statue, figure, theatrical production or electrical reproduction; or
>
> (C) Any text or image stored on a computer hard drive, a computer disk of any type, or any other medium designed to store information for later retrieval.

Id. § 39-17-1002(2). The statute does not define "possess."

In support of his argument that the sexual exploitation of a minor statute is unconstitutional, the appellant cites Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S. Ct. 1389 (2002), in which the United States Supreme Court held that the Child Pornography Prevention Act (CPPA) of 1996 was unconstitutional. That Act had defined child pornography as "'any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture' that 'is, or appears to be, of a minor engaging in sexually explicit conduct.'" Id. at 241, 122 S. Ct. at 1397 (quoting 18 U.S.C. § 2256(8)(B)) (emphasis added). The Act also had defined child pornography as "any sexually explicit image that was 'advertised, promoted, presented, described, or distributed

in such a manner that <u>conveys the impression</u>' it depicts 'a minor engaging in sexually explicit conduct.'" <u>Id.</u> at 242, 122 S. Ct. at 1397 (quoting 18 U.S.C. § 2256(8)(D)) (emphasis added). The Court concluded that the provisions were unconstitutionally overbroad because they prohibited images that were neither obscene under <u>Miller v. California</u>, 413 U.S. 15, 93 S. Ct. 2607 (1973), nor caused harm to an actual child during the production process as described by <u>New York v. Ferber</u>, 458 U.S. 747, 102 S. Ct. 3348 (1982).

The appellant's arguments regarding the constitutionality of the statute have been previously addressed by this court. In <u>State v. Richard Allen Butler</u>, No. E2004-00359-CCA-R9-CD, 2005 Tenn. Crim. App. LEXIS 302, at *17 (Knoxville, Mar. 30, 2005), <u>perm. to appeal denied</u>, (Tenn. Aug. 22, 2005), a panel of this court concluded that "subsection (b) of the sexual exploitation of a minor statute, by allowing a jury to infer that a participant is a minor . . . comes too close to permitting a conviction based on the possession of material in which an actual minor is not involved, in violation of the holding in <u>Free Speech Coalition</u>." <u>Id.</u> Nevertheless, the <u>Butler</u> court concluded that although subsection (b) was unconstitutional, subsection (a) was constitutional because, unlike the CPPA, it did not contain the phrases "appears to be" and "conveys the impression." <u>Id.</u> at *23-24. Therefore, subsection (a), when severed from subsection (b), "does not proscribe the possession of 'virtual' child pornography or of material containing youthful-looking adults rather than actual children." <u>Id.</u> at *24.

In the recent case of <u>State v. Gregory T. Harwood</u>, No. M2004-01811-CCA-R9-CO, 2005 Tenn. Crim. App. LEXIS 988 (Nashville, Sept. 7, 2005), this panel disagreed with <u>Butler</u>'s holding that subsection (b) is unconstitutional. In reaching this conclusion, we determined that Tennessee's sexual exploitation of a minor statute could be "sharply distinguished" from the CPPA in that the plain language of Tennessee's statute is limited to material that involves actual children as opposed to "virtual images or youthful-looking adult actors, as did the CPPA." <u>Id.</u> at **13, 16. Furthermore, we concluded that the permissive inference in subsection (b) did not shift the burden of proof from the State to the defendant but provided the State with an alternative means of meeting its burden of proof by "simply list[ing] examples of the circumstantial evidence that may properly be considered by the factfinder in determining whether or not the actor was a minor." <u>Id.</u> at **23-24. As this court held in <u>Butler</u> and <u>Harwood</u>, we conclude in the present case that subsection (a) of Tennessee's sexual exploitation of a minor statute is not overbroad. Moreover, we agree with this court's reasoning in <u>Harwood</u> that subsection (b) does not shift the burden of proof from the State to a defendant. Regarding the appellant's claims that the statute is unconstitutional as applied, he fails to make any argument regarding this issue. Therefore, it is waived. <u>See</u> Tenn. Ct. Crim. App. R. 10(b) (providing that "[i]ssues which are not supported by argument . . . will be treated as waived in this court").

## B. Sufficiency of the Evidence

Next, the appellant claims that the evidence is insufficient to support the convictions because the State failed to prove that he knowingly possessed the pictures and failed to prove that the pictures

depicted real versus virtual children or youthful-looking adults. The State claims that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Moreover, we note that a guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). While a guilty verdict may result from purely circumstantial evidence, in order to sustain the conviction the facts and circumstances of the offense "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." State v. Crawford, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971).

### 1. Knowing Possession

The appellant contends that the State failed to prove that he knowingly possessed the pictures. Specifically, he argues that he did not knowingly possess the pictures because the pictures were automatically saved to his computer when he visited child pornography websites as opposed to his having actively downloaded and saved them to his computer hard drive.

As stated previously, the sexual exploitation of a minor statute requires that a defendant knowingly possess material that includes a minor engaged in sexual activity or simulated sexual activity that is patently offensive. Tenn. Code Ann. § 39-17-1003(a). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b). "Possess" is not defined in the statue. However, Black's Law Dictionary defines "possess" as "[t]o have in one's actual control; to have possession of." Black's Law Dictionary 1183 (7th ed. 1999).

In finding that the appellant knowingly possessed the pictures, the trial court relied on United States v. Tucker, 150 F. Supp. 2d 1263 (D. Utah 2001). In that case, the defendant was paroled after completing a sentence for sexual abuse of a child. Id. at 1264. While on parole, the defendant used a computer to visit child pornography websites. Id. Parole officers received information about a possible parole violation and searched the defendant's home and computer. Id. During the search,

the officers discovered that child pornography images had been deleted from the defendant's computer that same day. Id. at 1265. Subsequently, the defendant was charged under 18 U.S.C. § 2252A(a)(5)(B) with knowing possession of child pornography. Id. at 1266. The defendant admitted that he had viewed several hundred pictures involving child pornography, which were automatically stored in his computer cache file and allowed the defendant to load the image more quickly if he wanted to look at the image again. Id. at 1265. The defendant would delete the images from the cache file when he was finished looking at them. Id. The defendant claimed that he did not knowingly possess the images because he did not download or intentionally store the images onto his computer hard drive. Id. at 1268.

The district court held that the defendant possessed the child pornography, stating,

> Tucker had control over the images he viewed on his computer due to the fact that he could detain them on his monitor as long as he liked and control them by, among other things, enlarging and manipulating them. While the images that Tucker received were on his computer screen, he could control them in many ways: he could copy them had he chosen; he could print them had he chosen; he could enlarge them and "zoom-in" on the pictures as he chose; he could show them to other[s] had he chosen; and he could copy them to other directories . . . . It is true that when Tucker viewed the images, the site and its images were automatically saved on Tucker's cache file, and that Tucker did not play any role in this automatic operation other than gaining access to the websites and viewing child pornography; yet Tucker also demonstrated ultimate dominion and control over these images because he was able to destroy them by deleting them from his hard drive. That Tucker had possession is not only evidenced by his showing and manipulation of the images, but also by the telling fact that he took the time to delete the image links from his computer cache file. Logically, one cannot destroy what one does not possess and control.

Id. at 1267. The court also determined that the defendant possessed the images knowingly because he "volitionally reached out" for them and intentionally deleted them from his cache file. Id. at 1269.

In the present case, the appellant's computer Internet history, printed out by Detective Mitchell, shows that between May 20 and June 13, 2002, the appellant voluntarily visited an extremely large number of child pornography websites. Moreover, the printout demonstrates that the appellant repeatedly reached out for these websites in order to access the images that ended up being stored in his computer's temporary Internet file. See Harwood, No M2004-01811-CCA-R9-CO, 2005 Tenn. Crim. App. LEXIS 988, at *8 (stating that repeatedly visiting a website that is clearly labeled child pornography is circumstantial evidence of knowing possession). As the trial court noted, the appellant had control over the images he viewed. In addition, there is evidence that

the appellant deleted some of the images from his temporary Internet file, resulting in the images being stored in the computer's unallocated space. Like the court in Tucker, we conclude that the appellant knowingly possessed the images.

## 2. Real Versus Virtual Images

The appellant also claims that the evidence is insufficient to support the convictions because the State failed to prove that the pictures were real as opposed to virtual and because the State failed to prove that the pictures depicted minors. However, in its order finding the appellant guilty, the trial court specifically stated that "the Court as the trier of fact finds that these images appear to be actual images and not computer generated." The trial court based this finding on Detective Mitchell's opinion that the images in the present case were real, not virtual or computer-generated. Moreover, the State introduced into evidence the sixty-four thumbnail pictures at issue and a printout showing all of the Internet websites that the appellant visited between May 20 and June 13, 2002. This court has independently viewed the pictures in question, and the pictures show young boys. Moreover, the computer printout shows that the appellant frequently and repeatedly visited websites such as "www.boysdaily.com," "www.amateurboys.com," "www.boysonly.com," and "www.lilboysroom.com." Given the detective's testimony, the pictures that were introduced into evidence, and the computer printout, we conclude that the trial court, as the trier of fact, could have reasonably concluded that the images were of real children as opposed to virtual or computer-generated images and involved minor boys as opposed to youthful-looking adults. Thus, the evidence is sufficient to support the convictions.

## C. Multiplicity

Next, the appellant argues that his convictions are multiplicitous and that the trial court erred by finding him guilty of eleven counts of sexual exploitation of a minor as opposed to a single count. The State claims that the appellant has waived this issue by failing to include it in his motion for new trial and that it is not appropriate for review under plain error analysis. In the alternative, the State contends that the trial court properly convicted the appellant of eleven counts when the evidence established that he possessed eleven pictures of child pornography. Initially, we note that despite the State's claim that the appellant waived this issue by failing to include it in his motion for new trial, we have reviewed the appellant's motion and this issue was included. Therefore, the issue has not been waived. Moreover, we conclude that the State failed to prove separate and distinct violations of the sexual exploitation of a minor statute and that the appellant's eleven convictions are multiplicitous.

Before trial, the appellant filed a motion requesting that the trial court dismiss counts two through eleven on the basis that the appellant could be convicted of only one count of sexual exploitation of a minor. In its order denying the appellant's motion, the trial court stated,

> Each count of the indictment charges the defendant with possession of this material between the dates of January 1, 2002 and

July 13, 2002. The discovery in this case reveals that the defendant visited numerous websites containing child pornography during this period. Thus, the Court is of the opinion each individual act of downloading this image to a disk or harddrive would constitute a separate and distinct offense. Each said activity can be proven by the state.

"Multiplicity concerns the division of conduct into discrete offenses, creating several offenses out of a single offense." State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996). Multiple convictions for the same offense violate federal and state constitutional prohibitions against double jeopardy. See U.S. Const. amend. V; Tenn. Const. Art. I, § 10. In determining whether offenses are multiplicitous, a court should consider the following principles:

> 1. A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution;
>
> 2. If each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous; and
>
> 3. Where time and location separate and distinguish the commission of the offenses, the offenses cannot be said to have arisen out of a single wrongful act.

Id. (footnotes omitted). "Additional factors such as the nature of the act; the time elapsed between the alleged conduct; the intent of the accused, i.e., was a new intent formed; and cumulative punishment may be considered for guidance in determining whether the multiple convictions violate double jeopardy." State v. Epps, 989 S.W.2d 742, 745 (Tenn. Crim. App. 1998).

In this case, the indictment alleges that the appellant committed the offenses between January 1 and July 13, 2002, and the State introduced into evidence a computer printout showing which websites the appellant visited from May 20 to June 13, 2002. The printout also shows the dates and times the appellant visited the websites. However, the State presented no evidence concerning which pictures came from which website or when the appellant accessed each picture. Detective Mitchell admitted during his direct testimony that he could not determine which pictures came from which website and could not determine when the petitioner accessed each picture. Therefore, all of the pictures could have come from a single website and could have been automatically downloaded onto the appellant's hard drive simultaneously. In other words, the State failed to prove that any time elapsed between the appellant's accessing the pictures or that the appellant formed a new intent as to each picture. Therefore, the State failed to make any distinction between the commission of the offenses. We hold that the appellant's possession of the eleven pictures in this case constitutes one crime, not separate crimes for each picture. The eleven counts are multiplicitous, and we reverse the appellant's convictions for counts two through eleven.

## D. Sentencing

Finally, the appellant claims that he was entitled to full probation and that the trial court erred by sentencing him to split confinement. He also contends that the trial court should have granted him judicial diversion. The State claims that the trial court properly sentenced the appellant. We agree with the State that the trial court properly sentenced the appellant but conclude that the trial court could not order the appellant to serve his ninety-day sentence in confinement at one hundred percent.

At the sentencing hearing, Lynn Harding, the appellant's neighbor, testified that he had watched the appellant grow up with other children in the neighborhood and that the appellant was respected in the neighborhood and truthful. He stated that he had never heard anyone say anything bad about the appellant. On cross-examination, he testified that the appellant told him that the appellant never looked at child pornography on the Internet. He said that he had a seven-year-old son and that he would not be concerned for his son to be around the appellant.

Stonewall Jackson, Jr., testified that he had known the appellant for about seventeen years and that the appellant worked for his construction company as a tow-truck operator for about four years. He said that he had never seen the appellant exhibit any inappropriate sexual behavior. The appellant's mother had served as a foster parent, and Mr. Jackson had never seen the appellant exhibit any inappropriate behavior around the foster children. He stated that, to his knowledge, the appellant had never lied to him. He said that the appellant was dependable, that he trusted the appellant, and that he did not believe the appellant posed a threat to young children. On cross-examination, Mr. Jackson testified that the appellant told him that the appellant did not do anything wrong and had been wrongly accused by a friend. The appellant told Mr. Jackson that the appellant had seen some child pornography websites on the Internet and was going to turn them over to the police.

The State introduced the appellant's presentence report into evidence. According to the report, the then thirty-nine-year-old appellant attended Woodbine Christian Academy through the tenth grade and took some college classes. The appellant described his physical and mental health as good and stated that he was not taking any medications. In the report, the appellant stated that he began drinking alcohol when he was fourteen years old but quit drinking when he was twenty-seven. The appellant reported that he had never used illegal drugs.

In sentencing the appellant, the trial court applied enhancement factor (2), that the appellant has a "previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," on the basis that the evidence showed that the appellant had a long history of visiting child pornography websites. See Tenn. Code Ann. § 40-35-114(2). The trial court also applied enhancement factor (4), that the offenses involved more than one victim. See Tenn. Code Ann. § 40-35-114(4). In mitigation, the trial court applied factor (1), that the appellant's conduct "neither caused nor threatened serious bodily injury," and factor (13) on the basis that the appellant had no prior criminal convictions. See Tenn. Code Ann. § 40-35-113(1), (13). The trial

court sentenced the appellant as a Range I, standard offender to two years for each conviction and ordered that the appellant serve counts one and eleven consecutively for an effective sentence of four years. The trial court determined that the appellant had little potential for rehabilitation because he had not accepted responsibility for the crimes. The trial court also believed some confinement was necessary in order to avoid depreciating the seriousness of the offenses and ordered the appellant to serve ninety days in the county workhouse.

Appellate review of the length, range, or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellants in their own behalf; and (7) the potential for rehabilitation or treatment. See Tenn. Code Ann. § 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentences. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

An appellant is eligible for alternative sentencing if the sentence actually imposed is eight years or less. See Tenn. Code Ann. § 40-35-303(a). Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). In the instant case, the appellant is a Range I, standard offender convicted of a Class E felony. Therefore, he is presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. §§ 39-13-102(a)(2) and (d)(1), -213(a)(1) and (b). However, this presumption may be rebutted by "'evidence to the contrary.'" State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996) (quoting Tenn. Code Ann. § 40-35-102(6)). The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Zeolia, 928 S.W.2d at 461.

The appellant only contests the trial court's ordering split confinement and failure to grant judicial diversion. We conclude that the trial court did not err by requiring the appellant to serve ninety days in confinement. The trial court concluded that a period of split confinement was necessary in order to avoid depreciating the seriousness of the offenses and because the appellant showed little potential for rehabilitation. We agree that the appellant shows little potential for rehabilitation. The appellant continues to deny that he committed any crime and has failed to seek treatment for his addiction to child pornography. Regarding the appellant's claim that the trial court should have granted him judicial diversion, we note that the appellant failed to request judicial diversion at any point during sentencing and requests judicial diversion for the first time on appeal. Therefore, the issue has been waived. See State v. Michael K. Miller, No. W2003-01621-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 674, at **12-13 (Jackson, July 27, 2004) (holding that defendant waived judicial diversion issue by failing to request it in the trial court).

We note that the judgment of conviction for count one provides that the appellant is to serve his ninety days in the county workhouse at one hundred percent. However, a defendant sentenced to the jail or workhouse for less than one year is entitled to earn good conduct credits, and a trial court cannot deny a defendant this right by imposing a "day-for-day" sentence. See Tenn. Code Ann. § 41-2-111(b). Therefore, we modify the sentence for count one to reflect that the appellant is to serve ninety days in the county workhouse less applicable conduct credits. See State v. Jared M. Barnes, No. E2001-00325-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 936, at *26 (Knoxville, Dec. 10, 2001).

## III. Conclusion

Based upon the record and the parties' briefs, we reverse the judgments of conviction for counts two through eleven and modify the sentence for count one to reflect that the appellant is to serve ninety days of confinement less applicable conduct credits. The judgment of the trial court regarding count one is affirmed in all other respects.

_____
NORMA McGEE OGLE, JUDGE